FILED
2021 SEP 22 PM 1:17
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CLAUDIA C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING [17] MOTION FOR REVIEW OF AGENCY ACTION AND REVERSING THE ALJ DECISION <br><br> Case No. 1:20-cv-00061-CMR <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff Claudia C. (Plaintiff) seeks judicial review of the determination of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act). After careful consideration of the written briefs, the administrative record, oral argument, and relevant legal authorities, the court REVERSES and REMANDS the decision for further proceedings.

## I.     BACKGROUND

Plaintiff was 36 years old and five months pregnant on her alleged disability onset date of December 2, 2015, the date of a car accident in which she fractured her pelvis, lost her baby, and suffered a traumatic brain injury resulting in a coma (Certified Administrative Transcript (Tr.) 350–51, 622, 633, 1161, 1177). Plaintiff filed applications for DIB on January 19, 2016 and SSI on March 3, 2016, alleging disability due to issues with standing, problems with her ovaries and pelvis from accident, and headaches (Tr. 91, 104).

In a decision dated November 15, 2018, the ALJ determined Plaintiff had severe impairments of status post head injury; status post pelvis fracture; deep vein thrombosis in the

legs; right ovarian laceration; depression, anxiety, cognitive disorder, and posttraumatic stress disorder (PTSD) (Tr. 31).  The ALJ considered Plaintiff's physical impairments under Listings 1.02 (major dysfunction of a joint); 7.08 (disorders of thrombosis and hemostasis); 11.18 (traumatic brain injury); and 1.08 (soft tissue injury), finding none applied (Tr. 31).  The ALJ considered her mental impairments under Listings 12.04, 12.06, and 12.15 and paragraph B criteria, finding mild limitations in understanding, remember, or applying information and in adapting or managing oneself, and moderate limitations in concentrating, persisting, or maintaining pace (Tr. 31–32).

Next, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work with additional limitations of "short, simple instructions" and "simple work-related decisions" and avoiding "moderate exposure to hazards such as machinery and unprotected heights" (Tr. 32–33).  At step four, the ALJ found that, given this RFC, she was able to perform past relevant work as a production assembler (Tr. 38).  The ALJ therefore concluded that she was not disabled and denied disability benefits (Tr. 39).  The Appeals Council then denied Plaintiff's request for review (Tr. 1–9), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981; 422.210(a).  This appeal followed.

## II.     STANDARD OF REVIEW

The court reviews the ALJ's decision to determine whether the record as a whole contains substantial evidence in support of the ALJ's factual findings and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  While substantial evidence is "more than a scintilla," it means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Hacket v. Barnhart*, 395 F.3d 1168, 172 (10th Cir. 2005)).  Under this

deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). However, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

### III. DISCUSSION

In determining whether a claimant qualifies as disabled, the Commissioner employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See id.* A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. 20 C.F.R. § 404.1545. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

Plaintiff's opening brief alleges several errors in the ALJ's decision, including that the ALJ did not properly weigh the medical opinion of Dr. Corydon Hammond, Ph.D., ECNS, QEEG-D, BCIA-EEG (Dr. Hammond). This error mandates reversal and remand and is therefore dispositive of Plaintiff's appeal. Accordingly, outside of discussing an inappropriate line of questioning by the ALJ, the court will address only this dispositive issue, and "will not

3

reach the remaining issues raised by [Plaintiff] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### A. The ALJ erred in failing to assign a weight to Dr. Hammond's opinion.

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). To reject a medical opinion, the ALJ must provide "specific, legitimate reasons" for doing so. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)). When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence). In other words, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

Plaintiff argues that the ALJ erred in failing to assign a weight to Dr. Hammond's opinion (ECF 25 at 7). In November 2016, Dr. Hammond performed a quantitative EEG evaluation (QEEG) of Plaintiff and provided his opinions regarding the results (Tr. 1401–05). Dr. Hammond found significant deficits in functioning in areas of the brain associated with anxiety, tension, worrying, initiation of movement, body movement, working memory, short-term memory, episodic long-term memory, attention, language processing, executive control of behavior, deductive reasoning, PTSD and word processing (Tr. 1401–02). Dr. Hammond opined that "[h]er QEEG is clearly abnormal, with a very serious deficit in delta activity, and deficits in theta, frontal beta and high beta" and that the abnormalities in her brain function were "consistent with her symptoms and would certainly no suggest malingering" (Tr. 1405). In his decision, the ALJ included a section entitled "Opinions," in which he discussed the medical

opinions of state agency physicians, consultative examiners, and treating physicians (Tr. 36–38), but nowhere in this section or elsewhere in his decision does the ALJ discuss the opinions of Dr. Hammond.  The only reference to Dr. Hammond's findings was in the ALJ's analysis of medical evidence regarding Plaintiff's brain injury where the ALJ stated that "testing of the claimant's brain showed abnormalities, with a 'very serious deficit in delta activity' and other areas of decline" (Tr. 35).

The attorney for the Commissioner, conceding it is a close call, argues that the ALJ was not required to weigh Dr. Hammond's opinion because it was not a medical opinion (ECF 27 at 9).  In support, the Commissioner relies on Dr. Hammond's own statements in his opinion that the QEEG "should serve only as an adjunct to other clinical evaluations" and "is not designed to independently diagnose conditions" (Tr. 1403).  A medical opinion is defined as "statements from acceptable medical sources that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

As a licensed psychologist, Dr. Hammond was an acceptable medical source.  *See* SSR 06-03P, 2006 WL 2329939, at *1 (Aug. 9, 2006).  According to Dr. Hammond, the QEEG "assesses brain function, providing scientifically objective information about patterns of brain activation and communication that can then be related to difficulties in life functioning, such as problems with attention, behavior, mood, learning, and executing functioning" (Tr. 1402–03).  Thus, even if Dr. Hammond's opinion did not diagnose Plaintiff with any conditions, he gave opinions about the severity of her impairments and symptoms, including opinions about her brain functioning that are relevant to work-related functions relating to memory and concentration.

5

The court therefore finds that Dr. Hammond's opinion was a medical opinion, and the ALJ erred in failing to assign a weight to Dr. Hammond's opinion.

The court disagrees that this error was harmless. The only other medical opinion in the record to conduct objective testing of her brain functioning was the psychological consultative examination by Dr. Dee Duncan, PhD (Dr. Duncan) (Tr. 534-39). The ALJ acknowledged that the testing resulted in a "poor cognitive test" and gave Dr. Duncan's opinion great weight (Tr. 37). This suggests that proper evaluation of Dr. Hammond's opinion could result in a different outcome if the ALJ finds that his opinion considered together with Dr. Duncan's opinion is sufficient to support additional limitations in her RFC to account for her abnormal brain function. Accordingly, the court concludes that the ALJ's failure to assign a weight to Dr. Hammond's opinion was reversible error.

### B. The ALJ engaged in an inappropriate line of questioning.

In light of the reversal on other grounds, the court does not reach Plaintiff's claim that she was deprived of a full and fair hearing under the Due Process Clause of the Fifth Amendment to the United States Constitution because of statements by the ALJ showing bias. Due the impropriety of the ALJ's statements, the court nonetheless briefly addresses them here. An ALJ "enjoys a presumption of honesty and integrity, which is only rebutted by a showing of 'some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'" *Harline v. DEA*, 148 F.3d 1199, 1204 (10th Cir. 1998) (quoting *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986)). To state a due process claim, "a plaintiff must sufficiently facts supporting a conclusion that the 'risk of unfairness is intolerably high' under the circumstances of the particular case." *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

While the court expresses no opinion as to whether Plaintiff has met this high burden in this case, the court agrees that the ALJ's statements were inappropriate. In questioning Plaintiff about her ability to speak English, the ALJ asked, "[W]hy do you think, after 16 years, you don't speak better English?" and then stated, "In order to get a better job in the United States, you have to speak better English. Did you ever see a need to learn better English to get better jobs?" (Tr. 65). The ALJ also relied on faulty statistical information in questioning the vocational expert: "We have 320 million people in the United States, approximately anywhere from 12 to 20 million Spanish-speaking people" (Tr. 83). Though questioning about ability to speak English was relevant under the regulations in effect at the time,[1] the ALJ's line of questioning appears to go beyond what was relevant and necessary. On remand, the court instructs the ALJ to ensure that due process standards are carefully followed "to prevent even the probability of unfairness." *See Harline*, 148 F.3d at 1204 (quoting *Withrow*, 421 U.S. at 47).

### IV. CONCLUSION AND ORDER

For these reasons, the ALJ's decision is REVERSED and REMANDED. On remand, the ALJ must properly evaluate the medical opinion of Dr. Hammond. Consistent with the findings above, and pursuant to sentence four of 42 U.S.C. § 405(g), the court REMANDS this matter for further administrative proceedings.

IT IS SO ORDERED.

DATED this 22 September 2021.

Magistrate Judge Cecilia M. Romero<br>
United States District Court for the District of Utah

---

[1] *See* Removing Inability to Communicate in English as an Education Category, 85 FR 10586-01, 2020 WL 885690 (Feb. 25, 2020).